1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**United States District Court**
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

VU TRONG NGUYEN,                          No. C 04-4104 MHP (pr)

        Petitioner,              **ORDER DENYING PETITION FOR
WRIT OF HABEAS CORPUS**

    v.

DERRAL ADAMS, Warden,

        Respondent.
_____/

**INTRODUCTION**

Vu Trong Nguyen filed this <u>pro se</u> action seeking a writ of habeas corpus under 28
U.S.C. § 2254.  The matter is now before the court for consideration of the merits of the
habeas petition.  For the reasons discussed below, the petition will be denied.

**BACKGROUND**

"It was undisputed that someone shot six men in a residential garage in the early
morning of March 15, 1997, killing one of them.  The central issue at trial was the identity of
the shooter.  The evidence pointing to defendant was that he had a motive, due to an ongoing
rivalry and confrontations between his Vietnamese gang and the victims' Vietnamese gang.
Defendant's brother was shot an hour before this shooting."  Resp. Exh. 6, Cal. Ct. App.
Opinion, pp. 2-3.  There were a number of out-of-court identifications of Nguyen as the
shooter, although they were mostly recanted at trial.  The California Court of Appeal devoted
many pages to elaborating on the history of the conflict between the gangs, the events on the
night of the shooting, the gang expert's testimony and the changing stories of many
witnesses.   This court will not repeat the state appellate court's summary of the evidence.

1  The defense theory was that a leader in a rival gang had orchestrated a plan to frame Nguyen
2  and had several people falsely identify him as the shooter.

3      Following a jury trial in Santa Clara County, Nguyen was convicted of one count of
4  first degree murder while personally armed with a handgun and five counts of attempted
5  premeditated murder while personally armed with a handgun.  See Cal. Penal Code §§ 187,
6  664, 12022.5.  He was sentenced to a total of 55 years to life in prison.

7      Nguyen appealed.  His conviction was affirmed by the California Court of Appeal and
8  his petition for review was denied by the California Supreme Court

9      He then filed this action.  The court issued an order to show cause why the writ should
10 not issue.  Respondent filed an answer and Nguyen filed a traverse.  The matter is ready for a
11 decision on the merits of the petition.

12                          **JURISDICTION AND VENUE**

13     This court has subject matter jurisdiction over this habeas action for relief under 28
14 U.S.C. § 2254.  28 U.S.C. § 1331.  This action is in the proper venue because the challenged
15 conviction occurred in Santa Clara County, California, within this judicial district.  28 U.S.C.
16 §§ 84, 2241(d).

17                               **EXHAUSTION**

18     Prisoners in state custody who wish to challenge collaterally in federal habeas
19 proceedings either the fact or length of their confinement are required first to exhaust state
20 judicial remedies, either on direct appeal or through collateral proceedings, by presenting the
21 highest state court available with a fair opportunity to rule on the merits of each and every
22 claim they seek to raise in federal court.  See 28 U.S.C. § 2254(b), (c).  State court remedies
23 were exhausted for the claims in the petition.

24                          **STANDARD OF REVIEW**

25     This court may entertain a petition for writ of habeas corpus "in behalf of a person in
26 custody pursuant to the judgment of a State court only on the ground that he is in custody in
27 violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).
28 The petition may not be granted with respect to any claim that was adjudicated on the merits

**United States District Court**
For the Northern District of California

in state court unless the state court's adjudication of the claim:  "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts."  Williams v. Taylor, 529 U.S. 362, 412-13 (2000).

"Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  Id. at 413.  "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."  Id. at 411.  A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable."  Id. at 409.

## DISCUSSION

A.   Failure To Instruct On Lesser Included Offenses

1.   Background

At trial, the jury was instructed on first degree murder and second degree murder, but not voluntary manslaughter.[1]  Defense counsel declined to request the instruction.  RT 3260.

On appeal and here, Nguyen urges that his federal constitutional rights to a jury trial and due process were violated by the trial court's failure to instruct the jury on heat of passion voluntary manslaughter.  He argues that there was enough evidence on heat of passion that the court was required to instruct on voluntary manslaughter even without a request.  The evidence of heat of passion was San Jose police officer Harris' testimony that,

3

when he arrived at the scene of the shooting of Nguyen's brother, Nguyen was there and was distraught. "He was somewhat in a panic, trying to get help" for his brother. RT 309. The officer thought Nguyen "was emotionally upset" and "emotionally distraught," and the officer was trying to "calm him down" because the paramedics would soon arrive to help his brother. RT 327, 328. This took place about an hour before the shooting in the garage. Also indirectly supporting heat of passion was the evidence from a gang expert that immediate retaliation "is pretty much out of character for Asian gang members," as they preferred to wait to avoid the heavy police scrutiny that happens with an immediate retaliation. RT 128.

The California Court of Appeal rejected this claim, over the dissent of one judge. The court explained that under state law, instruction on lesser-included offenses was required when there was substantial evidence of the offenses. The court assumed that the shooting of one's brother was sufficient provocation for heat of passion voluntary manslaughter, and assumed arguendo that there should have been an instruction about heat of passion and voluntary manslaughter, but concluded that Nguyen was not prejudiced by the omission of the instruction. Cal. Ct. App. Opinion, p. 33. The court applied the state law error standard of review because it found that a failure to instruct on a lesser included offense would only be a state law error. Id. The court explained that "the evidence of heat of passion was weak, if not entirely speculative. The evidence of premeditation and deliberation was strong." Id. at 34. The heat of passion evidence was that defendant was emotionally upset at the scene of his brother's shooting and "an hour later defendant shot up a room full of people." Id. On the other hand, there was strong evidence of motive in that there was a preexisting gang rivalry and prior confrontations over the years that indicated a "'studied hatred and enmity.'" Id. at 34-35 (citation omitted). Revenge is not a passion as to which the heat of passion concept applies under California law. Id. at 32. There also was evidence of planning "in that the shooter organized several weapons and two accomplices, including a getaway driver, before traveling to the scene of the shooting. Even during the shooting, the shooter paused and either reloaded or drew another weapon before resuming fire." Id. at 35.

The dissenting judge in the California Court of Appeal saw the failure to instruct on

the lesser included offense as reversible error under state law as well as the federal constitution.  Cal. Ct. App. Dissenting Opinion (Rushing, J.), p. 1.  He thought the evidence warranted the voluntary manslaughter instruction because, at the scene of his brother's shooting about an hour before the killing in the garage, Nguyen "was emotionally upset, in a panic, and repeatedly indicated he had to get his brother to the hospital.  The police tried to calm [him] down." Id.  As to the federal constitutional error, the dissenter thought that, in light of the existence of sufficient evidence to support a voluntary manslaughter verdict, "the instructions were incomplete on the element of malice and therefore violated defendant's right to a jury trial." Id. at 2.  The dissenter thought that the heat of passion issue was properly presented and therefore the failure to instruct was erroneous under Mullaney v. Wilbur, 421 U.S. 684 (1975).

2.     Analysis

There is no clearly established federal rule that a trial court must instruct on all lesser included and lesser related offenses.  Although instructions on lesser included offenses must be given in capital cases, Beck v. Alabama, 447 U.S. 625 (1980), "[t]here is no settled rule of law on whether Beck applies to noncapital cases such as the present one.  In fact, this circuit, without specifically addressing the issue of extending Beck, has declined to find constitutional error arising from the failure to instruct on a lesser included offense in a noncapital case." Turner v. Marshall, 63 F.3d 807, 819 (9th Cir. 1995), overruled on other grounds by Tolbert v. Page, 182 F.3d 677, 685 (9th Cir. 1999) (en banc).  The failure of a state trial court to instruct on lesser-included offenses in a non-capital case does not present a federal constitutional claim.  See Solis v. Garcia, 219 F.3d 922, 929 (9th Cir. 2000), cert. denied, 534 U.S. 839 (2001); Windham v. Merkle, 163 F.3d 1092, 1105-06 (9th Cir. 1998).  The failure to instruct on the lesser-included offense of voluntary manslaughter did not violate any constitutional right Nguyen possessed.

Notwithstanding the lack of a specific rule requiring the court to instruct on lesser-included offenses, there is authority that habeas relief is available when there is a failure to instruct on the defendant's theory of the case or when it so infects the entire trial that the

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1  resulting conviction violates due process.  See Conde v. Henry, 198 F.3d 734, 739 (9th Cir.

2  2000) (error to deny defendant's request for instruction on simple kidnaping where such

3  instruction was supported by the evidence).  Neither approach aids Nguyen, even if one

4  could consider these cases to be compelled by clearly established federal law as determined

5  by the Supreme Court.

6        The right to present a defense was not impeded because voluntary manslaughter

7  simply was not the theory of the defense.  Nguyen's defense was not that he had killed in the

8  heat of passion.  Rather, his defense was that he was not the shooter.  That the defense was

9  identity and not heat of passion is abundantly evident in the closing argument.  Defense

10  counsel argued with a coherent theme that Nguyen was not present and was not the shooter.

11  He argued that this was a frame-up orchestrated by Eight Ball, who had convinced

12  acquaintances to misidentify the shooter as Nguyen and had hoodwinked the police into

13  believing the shooter was Nguyen.  Defense counsel tried to redirect the jury's attention to

14  Loc as the possible shooter, and explained that Loc knew the group was at the garage on the

15  night of the shooting.  And defense counsel argued that Nguyen was actually at the hospital

16  during the time of the shooting.  Therefore, the absence of instructions on the lesser-included

17  offense did not impede Nguyen's right to present a defense.  On this point, it is significant

18  that the defense counsel expressly refused instructions pertaining to how murder is reduced

19  to manslaughter when committed in a heat of passion.  Only after the verdicts went against

20  him did the defense change course and decide that such instructions would have been helpful.

21

22        The instruction also was not necessary to avoid a fundamentally unfair trial. Nguyen

23  rests his argument largely on Mullaney v. Wilbur, 421 U.S. 684, but that case does not

24  support the weight he (and the state appellate court dissenting judge) put on it.  Mullaney

25  concerned a state rule that required a defendant charged with murder to prove that he acted in

26  the heat of passion on sudden provocation.  Id. at 703. In accord with the rule, the jury was

27  instructed "that if the prosecution established that the homicide was both intentional and

28  unlawful, malice aforethought was to be conclusively implied unless the defendant proved by

a fair preponderance of the evidence that he acted in the heat of passion on sudden provocation." Id. at 686.  This rule violated due process. Id. at 703.  The Court explained that it was intolerable that under this allocation of the burden of proof the defendant could receive a life sentence for murder "when the evidence indicates that it is as likely as not that he deserves a significantly lesser sentence." Id. at 703.  Of key importance here is the Court's holding that "the Due Process Clause requires the prosecution to prove beyond a reasonable doubt the absence of the heat of passion on sudden provocation when the issue is properly presented in a homicide case." Id. at 704 (emphasis added).  In Mullaney, the defendant admitted and there was circumstantial evidence that he killed the victim, but he claimed that he had attacked the victim in a frenzy provoked by the victim's homosexual advances. Id. at 685.

　　　　The California Court of Appeal's rejection of Nguyen's claim was not contrary to, or an unreasonable application of, Mullaney.  Unlike the Maine rule in Mullaney, California does not require the defendant to shoulder the burden of proof on the existence of heat of passion.  Unlike Mullaney, Nguyen's jury was not instructed that Nguyen had to prove that he acted in the heat of passion or that without such proof, malice aforethought would be conclusively implied from an intentional killing.  In fact, even though it was only a brief mention, the jury instruction for deliberate and premeditated murder at Nguyen's trial did mention that that state of mind did not include heat of passion.  See CALJIC 8.20 ("If you find that the killing was preceded and accompanied by a clear, deliberate intent on the part of the defendant to kill, which was the result of deliberation and premeditation, so that it must have been formed upon pre-existing reflection and not under a sudden heat of passion or other condition precluding the idea of deliberation, it is murder of the first degree").  The inclusion of that point in the jury instruction is only noted to show there was not a misstatement of the burden of proof; neither  the majority nor the dissent in the California Court of Appeal thought this brief mention would have been adequate explanation of heat of passion if instruction was needed on the point.  See Cal. Ct. App. Opinion, p. 35; Cal. Ct. App. Dissenting Opinion, p. 2.  Most importantly, Mullaney imposed the duty to prove the

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

absence of heat of passion "when the issue is properly presented," 421 U.S. at 704, which it was in Mullaney because the defendant admitted killing the victim and offered heat of passion as his defense. It was not unreasonable to decline to extend the duty from a case where the issue was presented as the theory of defense to a case where the defendant had not asserted the issue at trial and the evidentiary support was slight. Nguyen faults the California Court of Appeal for not discussing or citing Mullaney, but discussion or citation of an important Supreme Court case is not necessary for a state court decision to pass muster under § 2254(d) analysis. See Early v. Packer, 537 U.S. 3, 8 (2002) (per curiam).

Additionally, the evidence that the decedent had shot Nguyen's brother was extremely slight. Bang claimed to be unable to identify who shot him and Nguyen never testified. For a heat of passion defense, it is necessary that the provocation be caused by the victim or reasonably attributable to the victim. See People v. Lee, 20 Cal.4th 47, 59 (Cal. 1999); People v. Spurlin, 156 Cal.App.3d 119, 125-26 & n.3 (Cal. Ct. App. 1984). In other words, one cannot rely on the provocation by one person to kill a third party. Nguyen fails to identify the evidence that showed how he knew the people responsible for shooting Bang were those people in the garage who he shot, such that a heat of passion instruction would have been warranted.

Instructional error is generally subject to a harmless error analysis, i.e., the court must determine whether the error had a substantial and injurious effect or influence in determining the jury's verdict, see Brecht v. Abrahamson, 507 U.S. 619, 637 (1993). See generally Fry v. Pliler, 127 S. Ct. 2321, 2328 (2007) (Brecht standard applies uniformly in all federal habeas corpus cases challenging criminal convictions under § 2254, regardless of whether the state appellate court recognized the error and reviewed it for harmlessness under the Chapman standard). Assuming for purposes of argument that there was an error in not instructing the jury on voluntary manslaughter, the error was harmless under the Brecht standard. The evidence of heat of passion was slight, and consisted of only emotional upset an hour before the shooting. When the shooting took place, the shooter sprayed the garage with bullets and shot numerous people, which might go beyond what reasonably can be considered to be an

act done in heat of passion after seeing one's brother with a gunshot wound.  The evidence of motive and planning was substantial, as explained by the California Court of Appeal.  Since heat of passion had not been emphasized at all in the evidentiary presentation, an instruction on it would have been quite unexpected for the jury.  It can be said with certainty that the absence of the instruction did not have a substantial and injurious effect or influence in determining this particular jury's verdict.

      3.   Ineffective Assistance of Counsel Claim On Instruction

Nguyen claims that his attorney was ineffective in failing to request the voluntary manslaughter instructions.  This claim fails on both prongs of the Strickland test.  Choosing to present only an identity defense was a sound strategy.  Presenting voluntary manslaughter as an alternative theory of defense would have diluted the strength of the identity defense because the defenses were mutually exclusive.  While inconsistent defense theories are permissible, they oftentimes result in neither theory being believable.  Jurors might well balk at the argument that every prosecution witness who said Nguyen was the shooter lied but if those witnesses were not lying Nguyen shot the people in a heat of passion.  The very certainty of the frame-up defense would disappear when this alternative was offered.

Also, choosing not to argue or request voluntary manslaughter instructions resulted in no prejudice in light of the weakness of evidence of heat of passion discussed in the preceding section.  Had the heat of passion theory been pursued, the defense would have been in the difficult position of trying to address the events in the hour before the shooting – trying to explain how Nguyen gathered weapons and accomplices to go about the shooting that allegedly was done in the heat of passion.  This does not thrust the burden of proof on the defense, but simply notes that the defense would have had to address these topics to combat the prosecution's contention that the gathering of accomplices and weaponry for the shooting showed premeditation and deliberation.

B.   The Discovery Violation And Judicial Criticisms Of Defense Counsel

Nguyen claims that the trial court erroneously instructed the jury that defense counsel concealed or failed to disclose discoverable evidence of a report about witness Thi Tran and

1    made other disparaging remarks regarding defense counsel in front of the jury.  He contends

2    that this violated his Sixth Amendment right to effective assistance of counsel by

3    undermining defense counsel's credibility, and violated his Fourteenth Amendment rights to

4    a fair trial and impartial judge

5         The state court of appeal described the facts that led to the discovery violation jury

6    instruction in detail, Cal. Ct. App. Opinion, pp. 20-22.  The essence of the problem was that,

7    despite numerous admonitions from the court, defense counsel did not turn over defense

8    investigator Vierra's notes of an interview of witness Thi Tran until mid-trial.  The existence

9    of the notes came to light when defense counsel asked the investigator during trial what the

10   witness had told him.  The trial court ordered the investigator's notes to be turned over and

11   observed that it appeared that defense counsel had "'been playing games with the discovery

12   statute.'"  Cal. Ct. App. Opinion, p. 22.  The trial court also decided to give CALJIC 2.28 as a

13   sanction for the discovery violation.  That instruction explained that the prosecution and

14   defense were required to disclose to each other before trial the evidence each intended to

15   present at trial; that "[c]oncealment of evidence or delay in the disclosure of evidence may

16   deny a party a sufficient opportunity to subpoena necessary witnesses or produce evidence

17   which may exist to rebut the non-complying party's evidence;" and that disclosures were to

18   take place at least 30 days in advance of trial except that material discovered within 30 days

19   of trial had to be disclosed immediately.  The instruction also stated that the defense had

20   "concealed or failed to timely disclose . . . [p]rivate investigator Brian Vierra's written report

21   of his phone interview with witness Thi Tran." RT 3276.  The instruction concluded:  "The

22   weight and significance of any concealment or delayed disclosures are matters for your

23   consideration.  However, you should consider whether the untimely disclosed evidence

24   pertains to a fact of importance, something trivial or a subject matter already established by

25   the credible evidence – by other credible evidence."  RT 3276-77.

26        The California Court of Appeal decided that any Sixth or Fourteenth Amendment

27   error was harmless:

28        The prosecutor attached no significance to this instruction in his argument to the jury.

United States District Court
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

> The instruction itself asked the jury to "consider whether the concealment or untimely disclosed evidence pertains to a fact of importance, something trivial or a subject established by the credible evidence – by other credible evidence." There was nothing dramatic or significant to the trial in Vierra's notes of his interview with Thi Tran. As the Attorney General points out, there is no reason to believe that the jury focused on this instruction rather than the evidence that defendant, during trial, had passed a note telling a witness how to testify. We are convinced this instructional error was harmless beyond a reasonable doubt.

Cal. Ct. App. Opinion, p. 25.

Nguyen argues that the cumulative impact of this instruction plus the trial judge's critical comments to and about defense counsel did prejudice him. The trial judge's several negative remarks to and about defense counsel are described in the California Court of Appeal's opinion at pages 25-26 and are not repeated here. After listing the various negative remarks, the state appellate court explained that state law on judicial mistreatment of counsel essentially requires an evaluation of each comment, but reserves relief for cases in which there is a pattern of judicial hostility. Cal. Ct. App. Opinion, p. 27.

> Our review of the record reveals that defense counsel only objected once to what defendant now characterizes on appeal as persistent judicial misconduct. He moved for a mistrial after the prosecutor suggested that he was signaling a witness. We conclude that the issue has been waived on appeal as to those comments that were not challenged at the time. (People v. Fudge (1994) 7 Cal. 4th 1075, 1108.) Nevertheless, we have examined defendant's claims of judicial hostility to see if he was afforded a fair trial. Having reviewed the entire transcript of 21 days of trial testimony, we do not find a pattern of persistent judicial antagonism towards defense counsel.
>
> Even assuming for the sake of discussion that any of the judge's comments were unwarranted by the circumstances, we would conclude that defendant was not prejudiced by them. As noted above . . ., the trial judge instructed the jury to take no cue about how to assess the evidence from the judge's rulings or behavior. These jury instructions mitigated the potential prejudice of any unwarranted comments. [Citations.]
>
> We conclude that the erroneous discovery instruction, whether considered alone or in combination with defendant's other alleged judicial errors, did not deprive defendant of a fair trial or otherwise prejudice him.

Cal. Ct. App. Opinion, pp. 27-28.

The right to present testimony as part of a defense is not without limitation and "may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process." Chambers v. Mississippi, 410 U.S. 284, 295 (1973). In pursuit of the right to present a defense, "the accused, as is required of the State, must comply with established

11

**United States District Court**
For the Northern District of California

1    rules of procedure and evidence designed to assure both fairness and reliability in the

2    ascertainment of guilt and innocence." Id. at 302.  Trial courts therefore may require that

3    trial witnesses be disclosed before trial and may impose sanctions on defendants (including

4    evidence preclusion) in appropriate circumstances when those requirements are violated.

5    See Taylor v. Illinois, 484 U.S. 400, 410-16 (1988) (exclusion of proposed defense witness

6    not timely disclosed); Michigan v. Lucas, 500 U.S. 145, 149 (1991) (evidence sanction for

7    failing to comply with notice requirements of rape shield law did not per se violate Sixth

8    Amendment right to present a defense); United States v. Nobles, 422 U.S. 225, 241 (1974)

9    (evidence preclusion sanction based on defense failure to comply with pretrial discovery rule

10   to disclose proposed witness' investigative report did not violate Sixth Amendment).  In

11   Taylor, Lucas, and Nobles, the sanction imposed was preclusion of part of the defense

12   evidence, a sanction much harsher than the mild sanction of the jury instruction used in

13   Nguyen's  case.  Nguyen has not shown a Sixth Amendment violation resulting from the

14   instruction given. Because this court finds no constitutional violation resulting from the jury

15   instruction, the cumulative error type approach Nguyen suggests is inappropriate – i.e., the

16   court declines the invitation to consider the prejudicial effect of the non-erroneous jury

17   instruction with any other claimed error.

18          Even if the giving of the instruction in Nguyen's case was error, it did not have the

19   necessary "substantial and injurious effect" on the verdict for habeas relief to be granted.

20   Brecht, 507 U.S. at 623.  Nguyen offers no argument that the discovery sanction instruction

21   made any difference at all to the verdict in his case.  The jury instruction did not tell the jury

22   to ignore the testimony of Vierra or Thi Tran, but only that the concealment/delayed

23   disclosure was a matter to be considered.  Nguyen does not dispute that the prosecutor did

24   not try to capitalize on the instruction in his closing argument.  And he does not dispute the

25   state court's determination that the interview notes were not dramatic or significant to the

26   trial.  Even if the instruction was error, it was harmless.

27          As to the alleged disparagement of defense counsel, Nguyen has not shown that the

28   state court of appeal's conclusion that there was not a pattern of persistent judicial

antagonism toward defense counsel was unreasonable.  Some comments were made outside the presence of the jury and could not have impacted the jury's view of the situation.  Many of the comments were based on defense counsel's failure to comply with basic evidence and procedural rules, and were mostly mild rebukes.  The meaning of several of the comments likely could not even have been deciphered by a jury.  Reading the list of the complained-of comments does not leave one with an "abiding impression that the judge's remarks and questioning of witnesses projected to the jury an appearance of advocacy or partiality." United States v. Parker, 241 F.3d 1114, 1119 (9th Cir. 2001).  The comments of the judge did not violate Nguyen's right to a fair trial.

Nguyen also claimed that the court's comments deprived him of his right to effective assistance of counsel.  He offers no explanation how any court comments affected the relationship between him and his counsel such that there was an interference with the right to counsel.  Cf. United States v. Amlani, 111 F.3d 705, 710 (9th Cir. 1997) (prosecutor's disparagement of counsel in front of defendant allegedly caused him to fire his attorney and hire a replacement).  The judge's comments did not deprive him of effective assistance of his chosen defense attorney for the same reasons mentioned above in the discussion regarding his due process claim.

C.    The Trial Court's Questioning Of Bang Nguyen

Petitioner's brother, Bang Nguyen ("Bang"), was called as a witness by the prosecution.  Out of the presence of the jury, Bang (who was represented by counsel), indicated he would invoke his Fifth Amendment privilege against self-incrimination.  The court granted the prosecution's request to give him use immunity.  Once the jury was seated, Bang began testifying and was evasive from the outset.  He gave many "I don't know" answers, including that he didn't know his wife's last name, didn't know whether his sister lived at his house, and didn't know several friends' last names.   RT 420-32.  Out of the presence of the jury, the court warned Bang that it believed he was "lying through [his] teeth" and would be held in contempt if he continued to do so.  RT 433.  The jury returned and the prosecutor's direct examination resumed.  The prosecutor asked whether Bang was testifying

United States District Court
For the Northern District of California

under a grant of use immunity, and Bang indicated he did not know what that was.  RT 450.  The court then asked him if he was granted immunity; Bang first denied it but then – after his attorney talked to him – stated he had been granted immunity.  The prosecutor resumed questioning and asked if Bang intended to refuse to testify; Bang responded, "I never said that."  RT 453.  The judge then announced that he would ask the questions in this area.  The judge asked whether Bang did not want to testify unless granted immunity; Bang denied that and denied that he had refused to testify.  Bang again consulted with his attorney.  The court asked whether he had refused to testify that morning and Bang continued to insist that he had not refused to testify.  Eventually the jury left the courtroom again and, in response to the court's question, Bang agreed that he had refused to testify by invoking the Fifth Amendment.  Defense counsel objected that it was improper for the court to convey to the jury that it was wrong for Bank to invoke the Fifth Amendment or to refuse to answer questions and argued that the witness was just confused by the questions.  The court stated that a witness's immunity and invocation of the Fifth Amendment went to the witness' credibility.  RT 460.   After the jury returned, the prosecutor again asked and Bang admitted that he had refused to testify that morning until he was granted immunity.  RT 462.

Nguyen claims that the trial judge's questioning of Bang violated his due process rights.  He contends that, by taking over the questioning, the judge indicated to the jury that the judge believed Bang was lying, the judge aligned himself with the prosecution, and the judge gave the jury the impression that Bang had refused to testify without any valid legal basis.

The California Court of Appeal rejected the claim.  Cal. Ct. App. Opinion, pp. 17-20.  The court concluded that Nguyen was not prejudiced by the court's questioning for several reasons.  Bang was a dubious witness, as reflected by his evasiveness, and he presented no exculpatory testimony about Nguyen's whereabouts in the hour before the shooting in the garage or the alleged orchestration of a misidentification by Eight Ball.  Id. at 19. Also, the questioning of Bang did not taint the testimony of the other alibi witnesses who claimed to have seen Nguyen at the hospital.  Id.  The prosecutor mentioned Bang in his closing

14

United States District Court
For the Northern District of California

argument only as an example of an uncooperative witness. The court also found important the fact that the jury instructions included the CALJIC 17.30 instruction that the jury was not to take cues from the judge. Id.

To analyze a federal habeas claim concerning a trial judge's behavior, the court asks "whether the state trial judge's behavior rendered the trial so fundamentally unfair as to violate federal due process under the United States Constitution." Duckett v. Godinez, 67 F.3d 734, 740 (9th Cir. 1995), cert. denied, 517 U.S. 1158 (1996). The mere fact that the judge's questions may have elicited answers detrimental to the defense or helpful to the prosecution is not enough. Id. Even in the context of a direct appeal where the standards are higher, see id., the record must disclose actual bias or leave the "reviewing court with an abiding impression that the judge's remarks and questioning of witnesses projected to the jury an appearance of advocacy or partiality." Parker, 241 F.3d at 1119. The judge, however, is "more than a moderator or umpire." Id. (citation and quotation marks omitted).

The trial judge's conduct with regard to Bang did not violate Nguyen's right to due process. Bang gave testimony that suggested he was testifying willingly and was anxious to tell the jury everything he knew to show that he and his brother were "innocent people" and had done nothing wrong. RT 449. It therefore was proper for the prosecutor to ask additional questions in an effort to show the misleading nature of these statements. The judge's initial questions appear to have been an effort to avoid reference to the details of the proceedings during which Bang had invoked the Fifth Amendment and been granted use immunity. But for Bang's evasiveness in response to the judge's questions, the judge's questions would have been fewer and more limited.

The judge made his feelings abundantly clear outside the presence of the jury, but was restrained when the jury was present. Nguyen does not contend that the judge's questions or statements had any effect on Bang; his claim instead centers on the effect on the jury. Cf. Webb v. Texas, 409 U.S. 95 (1972) (due process was violated when judge's extensive and coercive comments to witness about perjury concerns caused witness to refuse to testify). The judge's questions were aimed at streamlining the presentation of evidence by getting to

the point with an evasive witness.  The questioning did not reflect a deep-seated antagonism toward the defense.

Nguyen argued that Bang's credibility and demeanor were critical and that "[i]f the jurors concluded that Bang Nguyen knew more than he let on at trial, then they were likely to conclude [Nguyen] must be guilty."  Resp. Exh. 3, AOB at 58.  Bang's credibility was ruined by his own evasiveness rather than the judge's actions.  His "I don't know" answers to extremely basic questions – e.g., his wife's last name, when he was married, his brother-in-law's occupation, who resided in his home – made him a most unbelievable witness.

Bang did not provide any critical evidence for either the prosecution or defense as he essentially claimed he saw nothing and knew nothing.  His testimony was undermined by his obvious evasiveness.   Whatever bad impression he made on the jury was a result of his behavior rather than the judge's questioning of him.  Also, the questions the judge asked (like the prosecutor's direct examination at that point in the questioning) had nothing to do with the shooting.  The prosecutor did not emphasize the information about the immunity agreement or the Fifth Amendment in his closing argument; instead, he argued that Bang was one of several persons acting pursuant to the gang mentality that leads gang members to try to manipulate the judicial system.  RT 3323-24.  Further, the jury was instructed that the judge had not intended, by anything he said or did or by any questions he asked, to suggest his views regarding the evidence or the credibility of witnesses.  RT 3511.

The judge's conduct with regard to the examination of Bang did not violate Nguyen's right to due process. The state court of appeal's rejection of the claim was not contrary to, or an unreasonable application of, clearly established federal law.

D.    Admission Of Evidence Of Prior Offenses

Evidence of prior violent crimes committed by Nguyen in 1993 and 1996 was admitted after the trial court had ruled in limine that the evidence was more probative than prejudicial.  The challenged evidence was that Nguyen was the driver in a 1993 gang-related freeway shooting[2] and had stabbed someone in a rival gang in 1996.[3]  The trial court gave a limiting instruction, directing the jury that this evidence could be considered only on the

1  issue of motive.

2      This evidence, if believed, may not be considered by you to prove that the defendant
       is a person of bad character or that he has a disposition to commit crimes.  It may be
3      considered by you only for the limited purpose of determining if it tends to show a
       motive for the commission of the crimes charged. [¶] For the limited purpose for
4      which you may consider this evidence, you must weigh it in the same manner as you
       do all other evidence in this case. [¶] You are not permitted to consider this evidence
5      for any other purpose.

6  RT 3277; see CALJIC 2.50.

7      Nguyen argues that the prior crimes evidence "added nothing to the prosecution's

8  theory" that the garage shooting was retaliatory for the shooting of Bang earlier that night.

9  Memo of P&As in Support of First Amended Petition, p. 64.  He also argues that this

10 "cumulative and tangential evidence of motive" was outweighed by the significant prejudice

11 involved in portraying him as a violent gang member.  Id.

12     The California Court of Appeal rejected this claim.   The court found no error under

13 state law. "In our view, evidence that a feud has been ongoing and long-standing may be as

14 probative or more probative of motive than a single recent conflict. [Citations.]" Cal. Ct.

15 App. Opinion, p. 12.  The court rejected the federal due process claim on the merits and

16 because the defense failed to object on federal constitutional grounds at trial.  Id.

17     A state court's evidentiary ruling may be addressed in a federal habeas action only if it

18 violates federal law, either by infringing upon a specific federal constitutional or statutory

19 provision or by depriving the defendant of the fundamentally fair trial guaranteed by due

20 process.  See Pulley v. Harris, 465 U.S. 37, 41 (1984); Walters v. Maass, 45 F.3d 1355, 1357

21 (9th Cir. 1995).  Failure to comply with state rules of evidence is neither a necessary nor a

22 sufficient basis for granting federal habeas relief on due process grounds.  See Jammal v.

23 Van de Kamp, 926 F.2d 918, 919 (9th Cir. 1991).  Only if there are no permissible inferences

24 that the jury may draw from the evidence can its admission violate due process.  See id. at

25 920.

26     There was a permissible inference that a jury could draw from the prior gang crimes

27 evidence.  That inference was that Nguyen had a motive for shooting a roomful of people

28 affiliated with a gang.  See Houston v. Roe, 177 F.3d 901, 910 n.6 (9th Cir. 1999), cert.

**United States District Court**
For the Northern District of California

17

United States District Court
For the Northern District of California

1   denied, 528 U.S. 1159 (2000) (no due process violation in admission of prior bad acts

2   evidence to show motive and intent); United States v. Santiago, 46 F.3d 885, 889 (9th Cir.),

3   cert. denied, 515 U.S. 1162 (1995) (evidence about prison gang admissible under Federal

4   Rule of Evidence 404(b) to show motive for prison stabbing).  Evidence of Nguyen's

5   participation in the shooting in 1993 and the stabbing in 1996 showed that the rivalry was

6   longstanding and strengthened the case that Nguyen had a motive for the garage shooting.

7   Nguyen's suggestion that the evidence was unnecessary for the prosecution's theory that he

8   retaliated for the shooting of Bang misstates the prosecution's theory: while the shooting of

9   Bang may have been the immediate cause, the prosecutor's theory of the case was that this

10  shooting was the culmination of a long violence-filled rivalry between the VN and SVN

11  gangs.  The evidence of the 1993 and 1996 crimes was not so inflammatory or prejudicial

12  that his trial was rendered fundamentally unfair.

13       Furthermore, the court gave limiting instructions on the use of the evidence, directing

14  the jury that the evidence could be considered for motive and nothing else.  This court

15  presumes "that jurors, conscious of the gravity of their task, attend closely the particular

16  language of the trial court's instructions in a criminal case and strive to understand, make

17  sense of, and follow the instructions given them."  Francis v. Franklin, 471 U.S. 307, 324 n.9

18  (1985); see also Richardson v. Marsh, 481 U.S. 200, 206 (1987) (referring to "the almost

19  invariable assumption of the law that jurors follow their instructions").

20       The admission of the prior crimes evidence did not violate Nguyen's right to due

21  process.  The state court of appeal's rejection of the claim was not contrary to, or an

22  unreasonable application of, clearly established federal law.

23       1.    Claim 7 Regarding Prior Crimes

24       In a separate claim (i.e., Ground 7), Nguyen argues that the evidence that these prior

25  crimes were gang motivated was improperly admitted.  His argument is a hodge-podge of

26  various ideas, including that the evidence was overly prejudicial, that the evidence denied

27  him his right to confront and cross-examine witnesses because Nguyen was unable to probe

28  the sources of information on which the gang expert based his opinions about the gang

**United States District Court**
For the Northern District of California

1    connection, and that there was insufficient evidence of a gang nexus.

2        The argument that the evidence was overly prejudicial fails because, as discussed

3    above, the crimes and their gang-relatedness were relevant to the issue of motive for the

4    garage shooting in 1997.  The admission of the evidence did not violate due process.

5        The Confrontation Clause argument fails because the defense did have an opportunity

6    to confront and cross-examine the gang expert and it was not necessary that each person who

7    had provided factual information on which he based his expert opinion also be put on the

8    witness stand.  <u>Cf.</u> <u>Delaware v. Fensterer</u>, 474 U.S. 15, 21-22 (1985) (no Confrontation

9    Clause violation in admission of testimony of prosecution expert who could not recall the

10   factual basis for his opinion; Confrontation Clause concerns generally were satisfied by

11   allowing defense to cross-examine the expert witness and expose the infirmities in his

12   opinion).  Several times during the testimony of officer Hogan (the expert), defense counsel

13   objected and the court eventually instructed the jury during Hogan's testimony that an

14   expert's testimony about matters learned from sources was limited to showing the basis for

15   his opinion rather than for the truth of the underlying facts.  <u>See</u> RT 116-17, 124-25.

16   Although officer Hogan was the one who connected the criminal acts to the gangs, there was

17   testimony from other witnesses about the crimes.  Two motorists, the shooter, and a police

18   officer who interviewed Nguyen upon his arrest in 1993 described the shoot-out on the

19   freeway in 1993 in which Nguyen was the driver.   The victim and other people testified

20   about the 1996 stabbing at the Touche Club.

21       The argument that there was insufficient evidence of a gang nexus goes to the weight

22   of the evidence and is not a constitutional claim.  Nguyen fails to appreciate that the gang

23   nature of the criminal activity was not an element of any of the offenses of which he was

24   convicted.  He was not prosecuted or convicted under the criminal street gang statute, Cal.

25   Penal Code § 186.22.

26       2.    <u>Request To Expand The Record</u>

27       In connection with the claims about the prior crimes evidence and a related ineffective

28   assistance of counsel claim, Nguyen wants to expand the record with regard to the 1993

shooting.  First, he wants to include portions of the court file from his 1993 criminal case regarding the freeway shooting to try to demonstrate there was no gang connection to the 1993 crime.  The records submitted show that the charging documents and the abstract of judgment do not reflect that there was an allegation or finding that the crime was committed for the benefit of a criminal street gang, see Cal. Penal Code § 186.22.  Second, Nguyen wants to expand the record to include business records that purportedly showed that the Moonrock Café did not exist in 1993 and the Tinh Café did exist in 1993.  The two establishments apparently were both located on Alum Rock Avenue, but were about seven blocks apart.

He contends that, when these records are considered, the record shows that gang expert officer Hogan gave false testimony and defense counsel failed to conduct an adequate investigation regarding the prior crimes to show their non-gang nature.  For the reasons explained below, even if one accepted that the documents showed that there was no charge or finding in the 1993 case that the crime was gang-related and the Moonrock Café did not exist in 1993, Nguyen falls far short of showing that any of his legal claims have merit.  The court will take judicial notice of the documents submitted from the criminal court case and expand the record to include those documents and the records regarding the Moonrock Café and Tinh Café.

The records pertain to the gang expert's testimony regarding the gangs and his opinion that Nguyen was in a gang.  Officer Hogan testified as an expert on Asian criminal street gang activity in Santa Clara County.  RT 103.  He testified that VN and SVN were rival Asian gangs in San Jose.  VN was much larger and may have had 300 members.  SVN had only about 15-20 members but had a powerful leader and was well-connected with Southern California gangs.  The leader of SVN was Ahn Tuan Hong and the second-in-command was Bang Nguyen, both of whom lived at 711 Gier Court.  Officer Hogan opined that Nguyen was in the SVN gang.  He explained the bases for his opinion: "Nguyen was involved in a gang-related or a gang-type shooting back in 1993;" Nguyen was involved in a gang-related stabbing in San Francisco against a VN gang member; Nguyen was involved in a gang-

related fight at the After Nine Club in San Jose with VN member; Nguyen lived at 711 Gier Court with SVN gang leaders Bang and Anh; and, Nguyen had a fight at county jail with a VN member after the garage shooting. RT 108-109, 114-115.  With regard to the 1993 shooting, officer Hogan testified that his opinion was based on his review of a 1993 crime report from the Milpitas police department.  He then testified: "On the evening of these events, they went to a coffee shop on Alum Rock Avenue.  It doesn't specify in here, but in '93 the only coffee shop, Asian place on Alum Rock was called the Moonrock Café."  RT 126.

Nguyen argues that the expanded record proves that the Moonrock Café did not exist in 1993 and that, in turn, shows that gang expert Hogan gave "demonstrably untrue testimony" that the freeway shooting arose out of a conflict in that café.  Request For Judicial Notice And Motion To Expand The Record, p. 3.  This, Nguyen believes, shows "there never actually existed any true connection between petitioner's 1993 case and his 1997 case." Id. Nguyen argues that the incorrect statement by officer Hogan that the 1993 shooting involved an incident at the Moonrock Café gave the false impression of a connection between the 1993 and 1997 events because the Moonrock Café was mentioned as the place VN members were seen before the garage shooting in 1997.[4]

Nguyen attempts to depict an incorrect assumption as a purposeful effort to mislead the jury.  The record, however, shows that officer Hogan identified the Moonrock Café as just an educated guess – he thought it was the only Asian coffee shop in the area in 1993 and therefore assumed that the unnamed coffee shop in the police report was the Moonrock Café. Officer Hogan's assumption apparently was wrong, but even if officer Hogan was wrong about the name, the name of the café in 1993 does not discredit the officer's other testimony. Nguyen and the shooter had an interaction with VN members on the freeway and at a café (whatever its name) on that day in 1993.[5]  Proving that it was a café other than the Moonrock would have done very little to aid Nguyen's defense.  Wherever the problem started, it was the gang-like nature of an exchange of looks followed by a shoot-out between two vehicles traveling down the freeway that was most noteworthy.  Nguyen may have

shown that officer Hogan's assumption was wrong, but he comes nowhere near showing a purposeful misleading of the jury.

Nguyen also has not shown that officer Hogan drew any connection between his belief that the Moonrock Café was the site of part of the episode in 1993 with the fact that some of the victims in the garage shooting had been at the Moonrock Café earlier on the day of the 1997 shooting.   Nor was that connection drawn by the prosecutor in his closing argument. Indeed, the prosecutor did not even mention the name of the café at which the VN members were seen before the garage shooting.  See footnote 4 and RT 3407.

Further, the name of the coffee shop or even the nature of the 1993 shooting was not the central issue in this case.  Officer Hogan's testimony was relevant to the gang issues, the gang rivalry in turn was relevant to motive, and motive was in turn relevant to show that it was Nguyen who did the shooting and the mental state he possessed when he did the shooting in the garage.  Officer Hogan testified that a number of factors went into his opinion that Nguyen was in the SVN gang.  The 1993 freeway shooting was a factor, but was not the only factor nor was it even identified as the most important factor.  There is no likelihood at all that Hogan's opinion would have changed if confronted with documents that showed that there was no allegation or finding in the 1993 case that the crime was done for the benefit of a criminal street gang.  Similarly, there is no likelihood at all that Hogan's opinion would have changed had he been cross-examined and forced to admit that the Moonrock Café was not the name of the coffee shop involved in the 1993 shooting.   The name of the café was background to the opinion that Nguyen was in the SVN gang, and that was relevant to motive to do the garage shooting. While the evidence of motive supported the prosecution's theory, motive was not an element of first or second degree murder.

The expanded record also would not strengthen Nguyen's argument that his counsel was ineffective for not investigating and pursuing a defense that Nguyen was not connected to a gang and that the 1993 and 1997 crimes shared no gang connection.  First, although the gang nature of the shooting permeated the case, Nguyen was not prosecuted or convicted under the criminal street gang statute, Cal. Penal Code § 186.22.  Much of Nguyen's current

argument seems to be targeted at disproving the applicability of that statute, but counsel had no obligation to show the inapplicability of a statute under which his client had not been charged. Second, the fact that a crime has not been charged or adjudicated to be for the benefit of a criminal street gang does not mean that the expert, prosecutor and jury cannot view it as a gang-related crime. Nguyen has not explained how counsel would have been able to explain a freeway shootout following an exchange of looks as anything other than a gang-related event. Third, the 1993 freeway shooting was only one of several bases for the expert's opinion that Nguyen was in a gang, and Nguyen has not shown how counsel would be able to undermine the several other bases for the expert's opinion. Fourth, it is extremely improbable that the expert's opinion that the 1993 shooting was gang-related would have changed or been discredited if defense counsel confronted him with evidence that the 1993 freeway shooting was not adjudicated to be for the benefit of a criminal street gang and had no connection to the Moonrock Café. Fifth, showing that Nguyen was not in a gang would have undermined the chosen defense strategy, as the defense theory of purposeful misidentification actually relied on there being a gang rivalry. The stronger the gang rivalry, the more believable the defense theory that Nguyen was being framed by a leader of the rival gang. Weakening or disproving his involvement in a gang at odds with another gang would leave the jury wondering why the latter gang's leader had chosen to orchestrate the purposeful misidentification of Nguyen as the shooter. Similarly, if a heat-of-passion defense theory had been pursued, trying to show Nguyen had no gang connection would undermine it because the gang rivalry helped explain why he shot these particular people. As noted in Section A.2 above, a heat of passion theory requires that the provocation be caused by the victim or reasonably attributable to the victim. Nguyen comes nowhere close to showing that counsel could have shown he had no involvement in the SVN gang. Even if he did, however, he would not have explained how it was that so many people identified him as the shooter in the garage. At least the chosen defense theory had an answer to that: multiple people had been convinced by rival gang leader Eight Ball to frame him. The purposeful misidentification defense made no sense if Nguyen had no gang connection, as it would have

left unanswered the obvious question of why Eight Ball chose Nguyen to frame.   For these many reasons, Nguyen has not shown that counsel's performance was deficient or that there was any resulting prejudice.

E.      Ineffective Assistance of Trial Counsel Claims

         The Sixth Amendment to the U.S. Constitution guarantees not only assistance, but effective assistance, of counsel.  See Strickland v. Washington, 466 U.S. 668, 686 (1984). The purpose of the right is to ensure a fair trial, and the benchmark for judging any claim of ineffectiveness is "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Id.  To prevail on an ineffective assistance of counsel claim, a habeas petitioner must show that (1) counsel's performance was "deficient," i.e., his "representation fell below an objective standard of reasonableness" under prevailing professional norms, id. at 687-88, and (2) prejudice flowed from counsel's performance, i.e., that there is a reasonable probability that, but for counsel's errors, the result of the proceedings would have been different.  See id. at 691-94.  The relevant inquiry under Strickland is not what defense counsel could have done, but rather whether his choices were reasonable.  See Babbitt v. Calderon, 151 F.3d 1170, 1173 (9th Cir. 1998), cert. denied, 525 U.S. 1159 (1999).

         A lawyer need not file a motion or make an objection that he knows to be meritless on the facts and the law.  See Wilson v. Henry, 185 F.3d 986, 990 (9th Cir. 1999) (to show prejudice under Strickland from failure to file a motion, petitioner must show that (1) had the motion been filed, it is reasonable that the trial court would have granted it as meritorious, and (2) had the motion been granted, it is reasonable that there would have been an outcome more favorable to him); Rupe v. Wood, 93 F.3d 1434, 1445 (9th Cir. 1996), cert. denied, 519 U.S. 1142 (1997) (failure to take futile action can never be deficient performance).

         Nguyen contends that trial counsel failed to investigate his prior conviction and other gang allegations that were used to show a gang motive for the garage shooting.  Counsel did object to the gang evidence, but Nguyen faults counsel for failing to investigate the validity of the allegations to discover whether they were "true" or whether there was any "valid" gang

United States District Court
For the Northern District of California

1    link to him.  With the exception of the Moonrock Café records and the 1993 criminal case

2    records discussed in the preceding section, Nguyen does not show what was available for

3    counsel to find with regard to the evidence of the prior crimes and gang allegations.  As

4    Nguyen concedes, counsel did object to the gang evidence.  Nguyen has not shown what

5    counsel could have found in an investigation that would have allowed him to successfully

6    keep out the evidence of any gang relationship to the 1993 crime, which by its very nature –

7    occupants of two vehicles traveling down a freeway shooting at each other – is rather

8    difficult to explain absent gang-related activity.   He also has not shown what counsel could

9    have done to keep out the testimony by the shooter in the 1993 freeway shooting that Nguyen

10   was the driver of the car from which he was doing the shooting.  Proving the negative – such

11   as that one is not affiliated with a gang – is quite difficult, and Nguyen has not particularized

12   what counsel could have done to establish his non-involvement in a gang, especially in light

13   of the many sources of evidence pointing in the direction of this being a gang shooting.  In

14   light of Nguyen's failure to identify what specifically counsel should have done to further

15   investigate, or what counsel would have found had he further investigated, the claim fails on

16   both the deficient performance and prejudice prongs of the <u>Strickland</u> test.

17        The failure to object to gang expert Hogan's testimony was not deficient performance

18   because the expert testimony was admissible.  An objection would have been futile.  Expert

19   opinion testimony is allowed if the subject matter of the testimony is "sufficiently beyond

20   common experience that the opinion of an expert would assist the trier of fact."  Cal. Evid.

21   Code § 801(a).  Testimony of criminal street gang habits meets §801's requirements.  <u>People</u>

22   <u>v. Gardeley</u>, 14 Cal. 4th 605, 617-20 (Cal.), <u>cert. denied</u>, 522 U.S. 854 (1997).  This

23   testimony may be based on inadmissible evidence, as long as experts in the field usually rely

24   upon such material.  Cal. Evid. Code § 801(b); <u>Gardeley</u>, 14 Cal. 4th at 618.

25   F.    <u>Ineffective Assistance of Appellate Counsel Claims</u>

26        The Due Process Clause of the Fourteenth Amendment guarantees a criminal

27   defendant the effective assistance of counsel on his first appeal as of right.  <u>See</u> <u>Evitts v.</u>

28   <u>Lucey</u>, 469 U.S. 387, 391-405 (1985).  Claims of ineffective assistance of appellate counsel

are reviewed according to the standard set out in <u>Strickland</u>.  A defendant therefore must show that counsel's advice fell below an objective standard of reasonableness and that there is a reasonable probability that, but for counsel's unprofessional errors, he would have prevailed on appeal. <u>Miller v. Keeney</u>, 882 F.2d 1428, 1434 & n.9 (9th Cir. 1989) (citations omitted).  Appellate counsel does not have a constitutional duty to raise every nonfrivolous issue requested by a defendant.  <u>See</u> <u>Jones v. Barnes</u>, 463 U.S. 745, 751-54 (1983).  The weeding out of weaker issues is widely recognized as one of the hallmarks of effective appellate advocacy.  <u>See</u> <u>Miller</u>, 882 F.2d at 1434.  Appellate counsel therefore will frequently remain above an objective standard of competence and have caused his client no prejudice for the same reason–because he declined to raise a weak issue.  <u>Id.</u>

Nguyen faults appellate counsel for not noting the difference between the Moonrock Café and the Tinh Café for purposes of the starting point for the 1993 freeway shooting. That mistake resulted in no prejudice to Nguyen's appeal, for the reasons explained in Section D.2, above.  Nguyen also complains that appellate counsel incorrectly identified him as having been in a gang.  However, this appears to have been consistent with the defense theory that Bang was identified as the shooter as retaliation by the leader of the VN gang.  In any event, it did not result in any prejudice to Nguyen's appeal, for the reasons explained in Section D.2, above.

Nguyen also faults appellate counsel for failing to raise meritorious issues to preserve them for federal habeas review.  The federal constitutional claims have been rejected for reasons discussed elsewhere in this order as well as in the order to show cause.  None of the claims were rejected in federal court for a procedural default.  The state law error claims were rejected by the California Court of Appeal.  It cannot be said that there is any reasonable possibility that Nguyen would have prevailed on appeal if the claims had been presented as Nguyen wanted them to be presented.

G.    <u>Prosecutorial Misconduct Claim</u>

Nguyen claims the prosecutor's closing argument misstated the burden of proof by equating it with a "gut feeling" that the defendant did it.

To evaluate this claim, the context of the objected-to phrase must be seen. The prosecutor was trying to explain the reasonable doubt standard:

> Now, reasonable doubt is if you, after considering all the evidence when you go back there, you take your time, you reason through it and you think that based on the comparison of all the evidence you don't have an abiding conviction of the truth of the charge, that would be your reasonable doubt.
>
> But it's not "I have some doubts" or "I doubt such and such happened," we're talking about the elements of the crime. Okay. And reasonable doubt is not beyond all doubt, it's not an imaginary doubt, it's not beyond a shadow of a doubt.
>
> Now, oftentimes you may be in the jury room and you'll be talking and you're thinking, "Well, I have some doubts about some of the things that are going on, but I really feel" – *you've got that gut feeling that the defendant did it.*
>
> Well, when you go back then, you come to that state where you just feel he did it and you've considered the evidence and you know you are making a reasonable and rational conclusion, that case is proved to you beyond a reasonable doubt. You don't need to go further.

RT 3319-20 (emphasis added). Defense counsel objected to the assertion as a misstatement of law. The trial court overruled the objection. The prosecutor then continued, "When you come to that state of the case, it will have been proven to you beyond a reasonable doubt." RT 3320. He then returned to an argument about the evidence. During his closing argument, defense counsel argued that the prosecution had tried to create a climate of fear based on the gang backdrop for the case so that the jurors would "respond viscerally, from the gut," and urged them not to do that but instead to examine the evidence. RT 3435. The jury instructions included the standard instruction on burden of proof, CALJIC 2.90, as well as the standard instruction that "[i]f anything concerning the law said by the attorneys in their arguments or at any time during the course of the trial conflicts with my instructions on the law, you must follow my instructions." RT 3267; CALJIC 1.00.

The California Court of Appeal rejected Nguyen's claim of prosecutorial error.

> Defendant argues as though the prosecutor said that a gut feeling alone was enough to find guilt. But the prosecutor also said that the jurors had to consider all the evidence and reach a reasonable and rational conclusion. In context, we understand the prosecutor to have argued that the jurors should convict defendant only if they have a certain feeling of his guilt based on their analysis of the evidence. Considering the entire context of the prosecutor's arguments, we conclude that the trial court did not err in overruling the defense objection.

Cal. Ct. App. Opinion, p. 30.

The appropriate standard of review for a prosecutorial misconduct claim in a federal habeas corpus action is the narrow one of due process and not the broad exercise of supervisory power.  Darden v. Wainwright, 477 U.S. 168, 181 (1986).  A defendant's due process rights are violated when a prosecutor's comments render a trial fundamentally unfair.  Id.; Smith v. Phillips, 455 U.S. 209, 219 (1982) ("the touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor.")  Under Darden, the inquiry is whether the prosecutor's remarks were improper and, if so, whether the comments infected the trial with unfairness.  Tan v. Runnels, 413 F.3d 1101, 1112 (9th Cir. 2005), cert. denied, 546 U.S. 1110 (2006).

The prosecutor's "gut feeling" comment did not violate Nguyen's right to due process. The statement was in the context of a larger argument about reasonable doubt and did not tell the jurors to convict based on just a gut feeling.  "Because 'improvisation frequently results in syntax left imperfect and meaning less than crystal clear,' 'a court should not lightly infer that a prosecutor intends an ambiguous remark to have its most damaging meaning or that a jury, sitting through a lengthy exhortation will draw that meaning from the plethora of less damaging interpretations.'"  Williams v. Borg, 139 F.3d 737, 744 (9th Cir.), cert. denied, 525 U.S. 937 (1998) (citation omitted).  This court will not infer that the jurors thought they could return a guilty verdict on a hunch or a gut feeling.  The prosecutor's overall argument was that the jurors should convict only if they had a certain feeling of Nguyen's guilt based on their analysis of the evidence, and the "gut feeling" statement was immediately preceded by an accurate paraphrase of the instructions regarding the presumption of innocence and proof beyond a reasonable doubt.

Defense counsel also met the point directly in his closing argument.  He argued that the prosecution had tried to create a climate of fear based on the gang backdrop for the case so that the jurors would "respond viscerally, from the gut."  RT 3435.  He urged the jurors not to be distracted from examining the evidence, as the judge would instruct was their duty. He also urged that the "plea from the gut from the prosecution is improper.  Don't do that. This is beyond a reasonable doubt, not a visceral passion, prejudice."  Id.  Defense counsel's

United States District Court
For the Northern District of California

1  argument tempered any effect of the prosecution's "gut feeling" statement.  In addition to

2  defense counsel's argument, the court's instructions provided legally accurate statements of

3  the reasonable doubt standard.  The court also instructed the jurors that the court's

4  instructions on the law governed and prevailed over any argument by the attorneys.

5       The prosecutor's statement did not violate Nguyen's right to due process.  The state

6  court of appeal's rejection of the claim was not contrary to, or an unreasonable application of,

7  clearly established federal law.  Nguyen is not entitled to the writ on this claim.

8  H.    Cumulative Error Claim

9       In some cases, although no single trial error is sufficiently prejudicial to warrant relief,

10  the cumulative effect of several errors may still prejudice a defendant so much that his

11  conviction must be overturned.  See United States v. Frederick, 78 F.3d 1370, 1381 (9th Cir.

12  1996).   There were not multiple errors in Nguyen's trial, so there are no errors to accumulate

13  and consider under the cumulative error doctrine.

14       Finally, petitioner's motion for information on the status of this case is DISMISSED

15  as moot.  (Docket # 35.)  This order provides that information: the petition that was under

16  submission has now been decided.

## CONCLUSION

18       The petition for writ of habeas corpus is DENIED on the merits.  The clerk shall close

19  the file.

20       IT IS SO ORDERED.

21  DATED:   October 10, 2008

22  _____
    Marilyn Hall Patel
    United States District Judge

United States District Court
For the Northern District of California

1

**NOTES**

2

1.      Nguyen also asserts that the failure to instruct on heat of passion <u>attempted</u> voluntary manslaughter was error.  For ease of understanding, the text only discusses the instructional error claim with reference to voluntary manslaughter, but the same analysis applies equally to attempted voluntary manslaughter.  Just as voluntary manslaughter is a lesser-included offense of murder, attempted voluntary manslaughter is a lesser-included offense of attempted murder.

3

4

5

2.      The state court of appeal described this incident:

6

On May 21, 1993, [Nguyen], Tong Lam, and another young man argued with someone at a coffee shop on Alum Rock Road.  They left and drove onto freeway 680.  Near Milpitas a van drove up behind them and someone fired shots at them.  While [Nguyen] was driving, Tong Lam took a semiautomatic handgun from the sunroof storage compartment, stood up through the open sunroof, and shot back at the van.  On May 21, 1993, Lam told Milpitas Police Officer Archie Labine that after the shooting they retrieved a revolver from a friend and were heading back to the coffee shop to find the van's occupants when the police stopped them [¶]  According to gang expert Hogan, the coffee shop was a VN stronghold and this shooting was gang-related.  Lam was a SVN associate.  Asian gangs like to use freeways for shootouts because that makes it harder to gather evidence.

7

8

9

10

11

Cal. Ct. App. Opinion, p. 8.

12

3.      The state court of appeal described the stabbing incident:

13

14

On November 2, 1996, Dat Nguyen was stabbed while waiting in line at the Touche Club in San Francisco.  He was stabbed in the left side of his face, his left shoulder, and the right side of his stomach.  At trial Dat admitted belonging to VN.  He did not see who stabbed him.  Cuong Tran took him to a hospital in San Jose. [¶] Cuong was at the Touche Club with his brother "Jerry," Dat, and Eight Ball.  At trial Cuong testified that defendant was at the club before the stabbing with Quy "Billy" Truong.  He did not see them after Dat was stabbed.  He did see a green BMW. [¶] On October 28, 1999, Cuong told investigator Schembri the following.  He was standing in line at the club when defendant and his group approached.  Because the groups disliked each other, a fight broke out during which defendant stabbed Dat.  Defendant ran to a green BMW.  Billy came out of the car and pulled out a gun and attempted to shoot them, but instead the magazine containing the bullets dropped to the ground.

15

16

17

18

19

20

Cal. Ct. App. Opinion, p. 9.

21

22

4.      Robert St. Amour, a San Jose police sergeant testified about activities that he witnessed at the Moonrock Café <u>in 1997</u> when he was working off-duty as a security officer.  He testified that the Moonrock was a café at which only non-alcoholic drinks were served and was frequented by predominantly Vietnamese customers.  It was next door to the pool hall.  On March 15, 1997, he witnessed a heated discussion among a group of 10-12 Vietnamese males and females, who eventually left the establishment in at least two vehicles.  One of the people in the group was Eight Ball, who was the "shot-caller" of the VN.  RT 260-61.

23

24

25

26

27

5.      Officer Hogan was not the only source of information about the 1993 shooting.  Two motorists described the freeway shooting they observed.  There also was information from the shooter and from an officer who interviewed Nguyen on the day of that shooting.

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Tong Lam, who did the shooting, testified that he and Nguyen had been at a café – perhaps the Tinh Café – on Alum Rock before the shooting on the freeway.  RT 205.  He said the shooting occurred because the men in the van, with whom he claimed to have had no history at the café, "looked at us and we looked at them back."   RT 210.  After they exchanged looks, the shooting started, with the people in the van shooting first, according to Lam.

David Rossetto, a Milpitas police commander, testified about Nguyen's statements during the initial interview upon his arrest for the 1993 shooting.  Rossetto testified that Nguyen "said that he had been at a café on Alum Rock and that he was being harassed or bothered in some way by two individuals.  He said he had been jumped, his words, jumped by some people at the same location a couple of days prior and that he felt the two people that were harassing him at the café that day were in some way involved with the prior incident he was involved in."  RT 251.  Rossetto testified that Nguyen said they left the café, got in his car, and as they were driving on the 680 freeway, a blue van rapidly approached and they heard gunshots, so someone in his car (who he would not identify) shot back at the van.

31